Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Attorneys for Individual and Representative
Plaintiff Marda Levy

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MICHAEL KREINDLER, on behalf of himself
and all others similarly situated,

                Plaintiff,

       vs.

ZELTIQ AESTHETICS, INC., MARK J. FOLEY,
D. KEITH GROSSMAN, DAVID J. ENDICOTT,
MARY M. FISHER, KEVIN C. O'BOYLE, and
ANDREW SCHIFF,
                Defendants.

Case No. 3:17-cv-1353

**CLASS ACTION COMPLAINT
FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS**

**<u>JURY TRIAL DEMANDED</u>**

       Plaintiff Michael Kreindler ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE AND SUMMARY OF THE ACTION

       1.     Plaintiff brings this action as a public stockholder of Zeltiq Aesthetics, Inc. ("Zeltiq" or the "Company"), on behalf of himself and the class of public stockholders of Zeltiq, against the members of Zeltiq's Board of Directors (the "Board" or the "Individual Defendants") and Zeltiq for their violations of Sections 14(a) and 20(a), and Rules 14a-9, 17 C.F.R. 240.14a-9,

17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4) promulgated thereunder by the U.S. Securities and Exchange Commission (the "SEC").  Specifically, Defendants solicit stockholder approval of the sale of the Company to Allergan Holdco US, Inc. ("Allergan" or "Parent") through Allergan's wholly owned subsidiary, Blizzard Merger Sub ("Merger Sub") (the "Proposed Transaction") through a proxy statement that omits to state material facts necessary to make the statements therein not false or misleading. Stockholders need this material information to decide whether to vote in favor of the Proposed Transaction or pursue their appraisal rights.

2.       On February 13, 2017, the Company announced that it had entered into a definitive agreement (the "Merger Agreement") by which Allergan, through its wholly owned subsidiary, Merger Sub, would acquire Zeltiq through a long-form merger to acquire all of the outstanding shares of Zeltiq for $56.50 per share in cash (the "Proposed Transaction").  The Proposed Transaction is valued at approximately $2.475 billion.

3.       On March 9, 2017, the Company filed a Preliminary Proxy on Schedule 14A (the "Proxy") with the SEC.  The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information about the potential conflicts of interest faced by Company management and the financial projections prepared by Company management relied upon by the Company's financial advisor.  Without all material information Zeltiq stockholders cannot make an informed decision to exchange their shares in the upcoming stockholder vote.  The failure to disclose such material information misleads stockholders and constitutes a violation of §§ 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to make a fully-informed decision regarding voting their shares in connection with the Proposed Transaction.

4.       For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws.  Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

**JURISDICTION AND VENUE**

5.      The claims asserted herein arise under §§ 14(a) and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction). This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.      The Court has personal jurisdiction over all of the defendants because each is either a corporation that conducts business in and maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Zeltiq maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8.      Plaintiff is, and has been at all times relevant hereto, a stockholder of Zeltiq.

9.      Defendant Zeltiq is a Delaware corporation with its headquarters located at 4410 Rosewood Drive, Pleasanton, California, 94588.

10.     Defendant Mark J. Foley ("Foley") has served as Zeltiq's President and Chief Executive Officer since August 2012 and as a director of the Company since 2009.

11.     Defendant D. Keith Grossman ("Grossman") has served as a director of the Company since October 2013 and its lead independent director since February 2016.

12. Defendant David J. Endicott ("Endicott") has served as a Director of the Company since April 2016.

13. Defendant Mary M. Fisher ("Fisher") has served as a director of the Company since September 2012.

14. Defendant Kevin C. O'Boyle ("O'Boyle") has served as a director since July 2011.

15. Defendant Andrew Schiff ("Schiff") has served as a director of the Company since July 2010.

16. Defendants Foley, Grossman, Endicott, Fisher, O'Boyle, and Schiff are collectively referred to herein as the "Individual Defendants," and the Individual Defendants are sometimes collectively referred to herein as the "Board."

17. Defendants Zeltiq and the Individual Defendants are collectively referred to as the "Defendants."

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings his claims against the Individual Defendants as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Zeltiq common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

19. Plaintiff's claim is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

20. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of February 10, 2017, there were approximately 40 million shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Zeltiq or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

21.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, among inter alia:

(a)     Have the Defendants solicited stockholder approval of the Proposed Transaction with a materially false, misleading and/or incomplete proxy statement;

(b)     Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct;

(c)     Whether Defendants have disclosed and will disclose all material facts about the Proposed Transaction to stockholders; and

(d)     Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

22.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

23.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

24.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25.     Zeltiq is a medical technology company focused on developing and commercializing products utilizing its proprietary controlled-cooling technology platform. ZELTIQ's first commercial product, the CoolSculpting® System, utilizing patented technology to reduce the temperature of fat cells through precisely controlled cooling, which is intended to cause fat cell elimination through a natural biological process known as apoptosis.  Zeltiq was founded in 2005 and is based in Pleasanton, California

26.     In a press release dated February 13, 2017, the Company announced that it had entered into the Merger Agreement with Allergan and Merger Sub, pursuant to which the Company will be acquired by Allergan and Zeltiq stockholders will receive $56.50 in cash for each share of Zeltiq common stock.  This represents a total equity value of approximately $2.475 billion.

27.     In relevant part, the press release reads:

DUBLIN, IRELAND and PLEASANTON, CA - FEBRUARY 13, 2017 - Allergan plc (NYSE:AGN), a leading global biopharmaceutical company, and ZELTIQ® Aesthetics, Inc. (NASDAQ:ZLTQ), a medical technology company focused on developing and commercializing products utilizing its proprietary controlled-cooling technology platform, today announced that they have entered into a definitive agreement under which Allergan has agreed to acquire ZELTIQ for $56.50 per share, or $2.475 billion, subject to customary adjustments.

The acquisition of ZELTIQ is immediately accretive and enhances Allergan's global medical aesthetics portfolio with the addition of ZELTIQ's flagship CoolSculpting® System, the sales leader in the fast-growing cash pay body contouring segment of medical aesthetics. The CoolSculpting System is FDA-cleared to affect appearance through lipolysis or reduction of unwanted fat using a patented cooling technology. CoolSculpting works by gently cooling targeted fat cells in the body to induce a natural, controlled elimination of fat cells without affecting surrounding tissue. Body contouring is a $4 billion market opportunity worldwide and growing.

"The acquisition of ZELTIQ is highly complementary and strategic to Allergan. By adding the best-in-class body contouring CoolSculpting System to our best-in-class facial aesthetics, plastic surgery and regenerative medicine offerings we are creating a world-class aesthetics business," said Brent Saunders, Chairman and CEO of Allergan. "With CoolSculpting, our offerings to plastic surgeons, dermatologists and aesthetic practitioners will now extend to three of the largest and fastest-growing segments of their practices, putting Allergan in a unique position to provide expanded customer service, and help meet the needs of patients."

"Allergan's world-class medical aesthetics products, global footprint, history and commitment to developing best-in-class aesthetic treatments makes the Company ideally suited to realize the maximum commercial potential of the ZELTIQ controlled-cooling technology platform," said Mark Foley, Chief Executive Officer of ZELTIQ. "I appreciate the unwavering commitment and dedication of the ZELTIQ team in building a world-class Company and technology platform with CoolSculpting. We look forward to working with Allergan to ensure successful completion of this transaction, and supporting the ongoing success of the CoolSculpting technology in the U.S. and around the world."

**The Process Preceding the Execution of the Proposed Transaction**

28.     Allergan initially approached the Company about a potential acquisition in mid-2014 after discussing a marketing partnership.   After several rounds of diligence and merger discussions over the next two years, the companies had failed to reach any conclusion in their negotiations.

29.     Defendant Foley met with Allergan on January 8, 2017 in conjunction with the J.P. Morgan Healthcare Conference.   During this meeting, Allergan inquired whether Zeltiq would be interested in potentially re-engaging in acquisition discussions.

30.     On January 27, 2017, Allergan called Defendant Foley again to discuss "a potential path toward negotiating an acquisition."   Allergan spoke again with Defendant Foley on February 1, 2017 to discuss setting up a meeting of the companies counsel to discuss a potential transaction.

31.     Counsel for the two companies met on February 6, 2017 to discuss antitrust and other legal considerations regarding a potential transaction.

32.     Indicating a non-binding $53 per share price, Allergan emailed Defendant Foley to restart negotiations on February 8, 2017 based on a previously negotiated draft merger agreement from 2015.   Defendant Foley responded by indicating that the Board would not accept a price of $53 per share, but might respond to a price of $60 per share.

33.     Later that day, the Board held part of its regularly scheduled meeting, also attended by its financial advisor Guggenheim Securities, LLC ("Guggenheim").   During this meeting, Defendant Foley stated that Zeltiq had not received any other indications of interest, and that he believed the parties contacted by Guggenheim during a previously aborted sales process would not be interested in or able to engage in merger discussions.   Following discussion of other strategic options, the Board approved a counter offer at $58.50 per share.

34.     The parties negotiated price over the next day, eventually meeting at a price of $56.50 per share, with a $75 million reverse termination fee in the case that merger did not receive regulatory approval.

35.     Over the next several days, the parties negotiated the remaining terms of the

merger agreement.

36.     During a meeting on February 12, 2017, the Board reviewed the potential merger. Guggenheim presented its financial analysis underlying its fairness opinion, and presented its oral fairness opinion.  The Board then unanimously agreed to approve the Merger Agreement.

37.     Before the opening of trading on February 13, 2017, Zeltiq and Allergan executed the Merger Agreement and issued a press release announcing the Proposed Transaction.

38.     On March 9, 2017, the Company filed the Proxy with the SEC.  Among other things, the Proxy states on page 42 that:

> Each of the executive officers is party to an offer letter (in some cases, as amended) providing that if his employment is terminated by ZELTIQ without "cause" or by the "executive officer" for good reason within three months prior to, or 18 months after, a change in control, he will receive salary continuation and COBRA premium reimbursement for 12 months (24 months in the case of Mr. Foley); a payment equal to his target bonus for the year of termination (two times the target bonus in the case of Mr. Foley); and accelerated vesting of equity awards. Pursuant to the terms of the merger agreement this 18month protection period is extended to 24 months with respect to the acceleration of the vesting of equity awards
>
> …
>
> To our knowledge, except for certain agreements described in this proxy statement between ZELTIQ and its executive officers and directors, no other employment, equity contribution or other agreement, arrangement or understanding between any executive officer or director of ZELTIQ, on the one hand, and Allergan or its affiliates, on the other hand, existed as of the date of this proxy statement, and the merger is not conditioned upon any executive officer or director of ZELTIQ entering into any such agreement, arrangement or understanding.
>
> Although such arrangements have not, to our knowledge, been discussed as of the date of this proxy statement, it is possible that members of our current management team will enter into new employment or consulting arrangements with Allergan or its affiliates. Such arrangements may include the right to purchase or participate in the equity of Allergan or its affiliates. Any such arrangements with the existing management team are currently expected to be entered into after the completion of the merger and will not become effective until after the merger is completed, if at all. There can be no assurance that the applicable parties will reach an agreement on any terms, or at all.

**The Proxy Materially Misleads Stockholders By Omission**

39.     Defendants filed the Proxy with the SEC in connection with the Proposed

---

Transaction.  As alleged below and elsewhere herein, the Proxy omits material information that must be disclosed to Zeltiq's stockholders to avoid materially misleading stockholders and enabling them to render an informed decision with respect to the Proposed Transaction.

40.     The Proxy omits material information with respect to the process and events leading up to the Proposed Transaction, as well as the opinions and analyses of Zeltiq's financial advisors.  This omitted information renders the Proxy materially misleading.  If disclosed, the omitted information would significantly alter the total mix of information available to Zeltiq's stockholders.

41.     First, the Proxy fails to disclose material information concerning the Company's financial projections.  First, the Proxy discloses two non-GAAP accounting metrics for projected financial information over the years 2017-2026:  Adjusted EBITDA and Unlevered Free Cash Flow.  However, providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading.  While the Proxy provides line-items necessary to reconcile Unlevered Free Cash Flow to Adjusted EBITDA, it provides none of the information necessary to reconcile Adjusted EBITDA to GAAP measures.  Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance.

42.     Because of the non-standardized and potentially manipulative nature of non-GAAP measures, when a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

43.     On May 17, 2016, the SEC's Division of Corporation Finance released updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures.  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.  S.E.C. Comp. & Disc. Interps., Question 102.07 (May 17, 2016)

https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.   The Proxy makes no effort to account for the failure to reconcile these non-GAAP measures to GAAP metrics.

44.     Without disclosure of these reconciling metrics, the Proxy violates SEC regulations and materially misleads Zeltiq stockholders.

45.     Additionally, the Proxy fails to disclose material information regarding employment negotiations taking place in the lead up to the Merger Agreement.

46.     Allergan lacks any expertise or knowledge of the Company's CoolSculpting technology.   The day that the merger was announced, Allergan's CEO Brett Saunders held a conference call for investors.   As reported by Sarah Pringle of The Street.com, "Saunders noted on the call that he suspects the vast majority of the Zeltiq team, led by medical  device veteran and CEO Mark Foley, will join Allergan post-transaction."

47.     Not only does Defendant Foley have a clear interest in ensuring that he remain with the combined company, according to the Proxy he stands to make $88,538,411 in the cash out of his vested and unvested options and restricted stock units.

48.     Other Individual Defendants also hold conflicts of interest that allowed Defendant Foley to push them into quickly accepting the Allergan offer.   Defendant Endicott served as President of Allergan Medical, Asia Pacific and Latin America, and as an executive committee member of Allergan from July 2010 to March 2014.   Defendant O'Boyle will make $3,785,048 in the cash conversion of his options and stock, and Defendant Grossman will earn $2,26,7709 in the conversion.

49.     The Proxy indicates that not only did Defendant Foley lead negotiations with Allergan, he also made assurances and arguments in favor of the merger and against seeking out other potentially interested strategic or financial partners.   When the Board considered whether to reach out to those parties it had contacted in 2015, Defendant Foley "confirmed that ZELTIQ had received no inbound expressions of interest from any other parties, including from any of the parties contacted in 2015, and explained why he did not believe that any of the parties contacted in 2015 would be interested in, or able to, engage in strategic discussions."   Defendant Foley

clearly favored a transaction with Allergan above any and all other strategic options.

50.     The Proxy materially misleads Zeltiq stockholders when it states that no employment agreements existed as of the date of the Proxy because it omits facts concerning prior communications between Allergan and any members of Zeltiq management regarding post-transaction retention of Zeltiq's management.  In stating that Company management "may" enter into such agreements in the future, the Proxy gives the impression that no such communications have taken place.  But the fact that Saunders could say he "suspects the vast majority" will join Allergan on the day of the Merger's announcement indicates such discussions have taken place, if not in 2017, then potentially in 2015.

51.     The failure to disclose the content and timing of such discussions materially misleads Zeltiq's stockholders as to the appropriateness of the Board's decision to not conduct any kind of market check with respect to the merger price, and the potential conflicts of interest faced by Company management in supporting the merger.

52.     These omissions of material fact represent selective disclosures made by Defendants in the Proxy that significantly alter the total mix of information that Defendants used to market the Proposed Transaction.  Defendants have misled investors into believing the Proposed Transaction is fair while refusing to disclose the full picture provided to the Board by its financial advisor.

53.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

**CLAIMS FOR RELIEF**

**COUNT I**

**Individual Claims Against All Defendants for Violations of § 14(a) of the
Securities Exchange Act of 1934**

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

56.     As discussed above, Zeltiq filed and delivered the Proxy to its stockholders, which defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

57.     Defendants violated § 14(a) and Rule 14a-9 of the Exchange Act by issuing the Proxy in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Proposed Transaction. Defendants knew or recklessly disregarded that the Proxy failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

58.     The Proxy was prepared, reviewed and/or disseminated by defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Proposed Transaction, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants.

59.     In so doing, Defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of § 14(a) and Rule 14a-9 of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Proxy, defendants were aware of this information and their obligation to disclose this information in the Proxy.

60.     The omissions and incomplete and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of the Proposed Transaction or seek appraisal. In addition, a reasonable investor would view

the information identified above which has been omitted from the Proxy as altering the "total mix" of information made available to stockholders.

61.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Proxy, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Proxy, rendering certain portions of the Proxy materially incomplete and therefore misleading.

62.     The misrepresentations and omissions in the Proxy are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the stockholder vote.

### COUNT II

**Individual Claims Against All Defendants for Violations of § 20(a) of the
1934 Act Against the Individual Defendants**

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     The Individual Defendants acted as controlling persons of Zeltiq within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Zeltiq and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

65.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy.

67.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

68.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)     declaring that the Proxy is materially false or misleading;

(C)     enjoining, preliminarily and permanently, the Proposed Transaction;

(D)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)     directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(F)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

1    (G)    granting Plaintiff and the other members of the Class such further relief as the

2  Court deems just and proper.

3                              **JURY DEMAND**

4                    Plaintiff demands a trial by jury.

5

6  DATED: March 13, 2017          **LEVI & KORSINSKY LLP**

7

8                          By:   */s/ Rosemary M. Rivas*
                                Rosemary M. Rivas

9

10                         Rosemary M. Rivas
                          44 Montgomery Street, Suite 650
11                         San Francisco, California 94104
                          Telephone: (415) 291-2420
12                         Facsimile: (415) 484-1294

13                         Counsel for Individual and Representative
                          Plaintiff Michael Kreindler
14

15                         Donald J. Enright (to be admitted *pro hac vice*)
                          **LEVI & KORSINSKY LLP**
16                         1101 30th Street NW, Suite 115
                          Washington, DC 20007
17                         Tel: (202) 524-4290
                          Fax: (202) 337-1567
18                         Email: denright@zlk.com

19                         Counsel for Plaintiff Michael Kreindler and
                          the Proposed Class
20

21

22

23

24

25

26

27

---

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS
CASE NO. 3:17-CV-1353